IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **NICOLE ESTES,** | ) | **CASE NO. 8:05CV510** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| **THE OMAHA SCHOOL FOUNDATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

The matter before the Court is the Defendant's Motion for Summary Judgment (Filing No. 33). For the reasons stated below, the motion is granted, and the Plaintiff's Complaint (Filing No. 1) will be dismissed.[1]

## Procedural History

The Defendant has submitted a brief in support of its Motion for Summary Judgment, the Plaintiff has submitted a brief in opposition, and the Defendant has submitted a brief in reply. Although the Defendant has complied with the format criteria of NECivR 56.1 by setting out a statement of facts consisting of short numbered paragraphs with pinpoint references to the record, the Plaintiff has not responded to *each* numbered paragraph as directed by NECivR 56.1.[2] Rather, only those facts the Plaintiff controverts

---

[1]The Plaintiff asserts federal law causes of action under the Americans with Disabilities Act, Title VII, and 42 U.S.C. § 1981, and state law causes of action under the Nebraska Fair Employment Act. Because I find no claim under any of the federal causes of action, I will not exercise jurisdiction over the state law causes of action. Unlike the asserted federal law claims, those state law claims will be dismissed without prejudice, and the Plaintiff can reassert those state law claims in state court if she so chooses.

[2]"The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." NECivR 56.1 (b)(1).

have been specifically addressed in the Plaintiff's brief.  Consequently, in accordance with the local rules, the Court will accept as true those facts properly referenced by the Defendant and not specifically controverted by the Plaintiff.

## Factual Background

The Defendant Omaha School Foundation d/b/a the Kids Club ("Kids Club") is a before and after-school program for students attending Omaha Public Schools.  Kids Club has several locations, including Crestridge and Prairie Wind.  (Filing No. 34, p. 3 ¶ 6).  Employees of Kids Club are hired on a school-year basis.  (Filing No. 34, p. 3 ¶ 2).  Linda Primm ("Primm") and Marlen Frost ("Frost") are program directors for Kids Club.  Tanya Johnson ("Johnson") is the director of Kids Club at Prairie Wind.  (Filing No. 34,  p. 3 ¶¶ 5–6, p. 4 ¶ 9).

The Plaintiff, Nicole Estes ("Estes"), was first hired by Kids Club during the 2002–03 school year to work at the Crestridge location.   Later, during the 2003–04 school year, Estes worked at the Prairie Wind location.  (Filing No. 34, p. 3 ¶ 6).  At both locations, Estes was employed by Kids Club as an assistant director.  (Filing No. 34, p. 2 ¶ 1).  As an assistant director, Estes was responsible for supervising the students, participating in activities with them, supervising other employees, preparing snacks and meals, making sure cleanup was completed, and assigning duties to other staff members.  (Filing No. 34, p. 3 ¶ 3).

Estes was diagnosed with multiple sclerosis ("MS") in January of 2002.  (Filing No. 34, p. 7 ¶ 22).  During her employment with Kids Club, Estes's MS limited her ability to stand, see, and lift.  Further, her balance was affected, and she was not able to walk long distances.  (Filing No. 34, p. 7 ¶ 23). No disability accommodations were requested during

her tenure at the Crestridge location; however, when she worked at Prairie Wind she requested two accommodations from Kids Club.  First, she requested that she be allowed to arrive at work ten minutes late, and second, that she be allowed to use the wheelchair owned by Prairie Wind while she worked.  (Filing No. 34, p. 7 ¶ 25).  That wheelchair was kept in a storage closet near the cafeteria.  Sometimes Estes would get it herself, and other times Johnson would get it for her.  (Filing No. 34, p. 8 ¶ 29).

During the 2002–03 school year, Estes was absent[3] twelve out of forty-five work days, or approximately twenty-seven percent.[4]  (Filing No. 34, p. 4 ¶ 9).  At the end of the 2002–03 school year, Estes received a letter dated June 5, 2003, from Frost.[5]  According to the contents of the letter, Estes was invited to return to work for Kids Club for the 2003–04 school year, but was informed that due to her poor attendance, she had to come

---

[3]The policies and procedures manual states the following attendance policy:

> Each employee is vital to the overall operation of Kids Club.  Kids Club and the Foundation count on you to come to work every workday, on time.  From time to time, absences are unavoidable.  If you must be absent, you are expected to notify your site program director, no later than 6:00 a.m. for the morning shift and/or 2:00 p.m. for the afternoon shift.  Excessive or unreported absences may result in disciplinary action, up to and including dismissal.  All absences and tardiness must be phoned in, even if coverage is arranged.

(Filing No. 34, p. 4 ¶ 8; Filing No. 36, p. 2 ¶ 1; Filing No. 37, p. 3 ¶ 1).

[4]Estes "controverts" the number of absences during the 2002–03 school year, but only supports her contention by arguing that "Kids Club has a progressive discipline policy which [sic] provides for a verbal warning, written warning then probation . . . No one had spoken to Estes about her attendance before getting the letter." (Filing No. 36, pp. 2–3 ¶ 2). This is insufficient to place the *number* of absences in controversy, and I find that Estes was absent twelve out of forty-five days—approximately a twenty-seven percent absence rate.

[5]Estes claims that Kids Club has a progressive discipline policy which provides for a verbal warning and a written warning before a probation period is imposed, and that no one at Kids Club spoke to Estes about her absences before she received the letter.  (Filing No. 36, pp. 2–3 ¶ 2). Regardless, the *receipt* and *contents* of the letter are not controverted.

3

back on a probationary basis.[6]   (Filing No. 34, p. 4 ¶ 9).  Estes signed the June 5, 2003, letter and understood that if she returned to Kids Club it would be on a probationary basis. (Filing No. 34, p. 4 ¶ 11).

Estes was not the only Kids Club employee to receive such a letter; Cheryl Henderson ("Henderson"), who is white and not disabled, received a letter identical to the one Estes received.  (Filing No. 34, p. 5 ¶ 12).[7]  Henderson was absent twenty-one out of one-hundred days—a twenty-one percent absence rate.  (Filing No. 34, p. 5 ¶ 12). [8]

Although Estes signed the June 5, 2003, letter indicating that she would return to Kids Club for the 2003–04 school year, she did not return in the fall.  Rather, it was not until February 2004 that Estes asked to return to her position, and was hired soon thereafter

---

[6]The relevant language of the letter stated the following: "If you choose to be part of our staff for the 2003–04 school year, your attendance must greatly improve.  You will be rehired on a probationary basis.  If your attendance is satisfactory, your probation will end in sixty days.  You may be terminated during this period, or any time thereafter, if excessive absences occur."  (Filing No. 35-13, Ex. A3).

[7]Estes "controverts" that Henderson received an identical letter, but supports her assertion only by stating that "it does not explain why the other employees at the same location . . . were not given a similar letter [and] no mention was made of where Ms. Henderson worked or who her supervisor was so there is no showing her termination was relevant in any way."  (Filing No. 36, p. 3 ¶ 4).  However, I note that regardless of the identity of Henderson's supervisor, *Frost* signed both Estes's and Henderson's letters.  Further, although Estes claims that "there is no showing [Henderson's] *termination* was relevant in any way," (Filing No. 36, p. 3 ¶ 4), I note that the Defendant at this point is referring to Henderson's receipt of a probation letter, not Henderson's termination.

[8]Relying on Kids Club's exhibits, Estes states that Donna Hohenstein "appears" to have worked one month and *missed* nearly half the days, Nicole Mollak "appears" to have *missed* four days in May 2003, and Lorisee Larson "appears" to have *missed* five days in April 2003, (Filing No. 36, p. 3 ¶ 3), and that "Estes was the only one placed on probation at Crestridge in the year 2003," (Filing No. 36, p. 14).  Even if I accept these facts as true, nothing offered by Estes demonstrates the ultimate fact at issue—whether these other employees' *absence rates* for the year were similar to Estes's.  Further, I note that Kids Club, in its brief in reply, has provided evidence that indicates Estes has misinterpreted the time sheets upon which she relies; this evidence has not been controverted by Estes.  (Filing No. 37, pp. 8–9 ¶¶ 1–9).

to work at Prairie Wind as an assistant director. (Filing No. 36, pp. 3–4 ¶ 5; Filing No. 34, p. 5 ¶ 14). Primm was responsible for rehiring Estes to work for Kids Club. (Filing No. 34, p. 5 ¶ 15).

On or about April 16, 2004, Estes arrived at Prairie Wind for work, but the wheelchair was not in the storage closet where it was typically kept. She asked a student to go to the nurse's office to get the wheelchair, and the student brought the wheelchair back to the cafeteria. However, before the student was able to give the wheelchair to Estes, another employee, Marilyn Holweger ("Holweger") took the wheelchair from the student and hid it. (Filing No. 34, p. 8 ¶ 30). After awhile, Holweger retrieved the wheelchair and "rolled" it at Estes. Estes claims she was without the chair for a total of two hours.

Later that day, Estes spoke by telephone with Johnson, who was absent, and reported to her what had occurred. (Filing No. 34, p. 9 ¶ 36). Primm apparently was informed about the incident, and went to Prairie Wind to discuss the situation with Estes and Holweger. Estes alleges that Primm called her a liar in front of Holweger. However, Estes recalls that Primm spoke to her and Holweger separately, and Estes did not hear what Primm said to Holweger. Primm also spoke with Estes about being thirty minutes late that day, although Estes denies being thirty minutes late. Primm disciplined Estes and Holweger, sending them both home a few minutes early. Being sent home early was the only discipline Estes received for the incidents of that day, and she never received any formal reprimand. (Filing No. 34, pp. 9–10 ¶¶ 38–40).

The April 16, 2004, incident was the only time Estes was deprived of the wheelchair during her employment with Kids Club. After the incident, all of the Kids Club employees

were instructed to leave the wheelchair where Estes could easily find it.  (Filing No. 34, p. 8 ¶ 35, p. 9 ¶ 41).

The following day, Estes was thirty minutes late to work.  Primm was again at Prairie Wind and talked with Estes about being so late, although Estes tried to explain to Primm that Johnson had approved Estes being ten minutes late as an accommodation for her disability.  Estes asked Primm to send her the employment handbook and the procedures for reporting insubordination.  Primm faxed the requested portions of the handbook to Estes on April 19, 2004.  Estes also received an employment handbook when she started working at Kids Club.  (Filing No. 34, p. 10 ¶¶ 42–43).

During her employment with Kids Club during the 2003–04 school year, Kids Club asserts Estes was absent fourteen out of sixty-five days, or twenty-two percent of the time.  (Filing No. 34, pp. 5–6 ¶ 16).[9]  Estes controverts this fact, stating that for one of the days Kids Club indicated as an absence, March 26, 2004, she "believes she was there and did not miss . . . ."  (Filing No. 36, p. 4 ¶ 6).  To support her contention, Estes cites to her deposition testimony:

> Q. Okay.  What about on the 26th, doesn't [the timecard] show that you were not there on the 26th?
>
> A. I don't know.

---

[9]As evidence, Kids Club submits Estes's timecards (Filing No. 35, Ex. A5); affidavits signed by Primm (Filing No. 35, Exs. B1, B3); and Estes's deposition testimony (Filing No. 35, Ex. A1, 58:3 to 64:12).  Estes states that, because her April timecard is missing and cannot be located, there is no competent evidence to support any of the absences claimed for the month of April 2004.  However, Estes does not support her assertion with a citation to contrary evidence that would demonstrate she was not absent during April.  Consequently, in accordance with this Court's local rules, I will deem as admitted Kids Club's absence calculations with respect to April 2004.

> Q. You don't know. Do you have any reason to dispute Kids Club's contention that you weren't there on the 26th?
>
> A. Yeah.
>
> Q. And what's your reason?
>
> A. I was there.
>
> Q. You think you were there?
>
> A. Yeah.

(Filing No. 35, Ex. A4, 62:6–17). Consequently, Estes's attendance for March 26, 2004, is controverted and, viewing the facts in the light most favorable to the Plaintiff, I will assume that Estes was not absent March 26, 2004. I find, for purposes of this motion, that Estes was absent thirteen out of sixty-five days—a twenty percent absence rate.

On June 4, 2004, Primm sent Estes a letter indicating that Kids Club would not be renewing her employment agreement. Estes telephoned Primm and asked why her employment agreement would not be renewed. Primm stated that because of her diability, she had missed critical days. Primm, however, could not tell Estes which days were critical. (Filing No. 34, p. 6 ¶ 20).

Henderson had a better attendance record than Estes, but was sent a nonrenewal letter identical to Estes's. (Filing No. 34, p. 6 ¶ 19).[10] Holweger, a white and nondisabled person, had sixteen absences between January and May of 2004, and twenty absences for the year. She also received a letter dated June 4, 2004, stating that her employment agreement would not be renewed. Charmaine Rolerkite, a white and nondisabled person,

---

[10] Estes attempts to controvert this fact, arguing that it is irrelevant, but does not support her contention with any citation to the record. (Filing No. 36, p. 5 ¶ 9).

7

had eight absences between January and May of 2004. She did not receive a nonrenewal letter. (Filing No. 34, pp. 6–7 ¶ 21).

## Standard of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not

significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000) (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (citations omitted).

## Discussion

Estes asserts two causes of action in her Complaint—the first is a claim of disability discrimination pursuant to the Americans with Disabilities Act, and the second is a claim of racial discrimination pursuant to the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Each cause of action is discussed below.

**A. Disability Discrimination**

Estes claims that Kids Club and its representatives violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), by (1) subjecting Estes to terms and circumstances of employment different than those that apply to nondisabled employees, in that nondisabled employees are not disciplined when their staff acts in an insubordinate manner and are not terminated when they attempt to recommend discipline for their

subordinates; and (2) failing to honor the accommodation promised to Estes. (Filing No. 1, p. 5 ¶¶ 18–19).[11]

### 1. Adverse Employment Action

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). ADA claims are considered under the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[12] *Fjellestad v. Pizza Hut of Am.*, 188

---

[11] Estes, in her brief, also attempts to assert a claim of a hostile work environment based on the April 16, 2004, incident. It has been stated by the Eighth Circuit that "[h]ostile work environments created by supervisors or coworkers have the following elements in common: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a casual nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1194–95 (8th Cir. 2006). In an instance where the claim for harassment stems from the actions of nonsupervisory personnel, the plaintiff must also show "that [the] employer knew or should have known of the harassment and failed to take proper action." *Id.* at 1195 (citing *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999)). Furthermore, "[o]ffhand comments and isolated incidents of offensive conduct (unless extremely serious) do not constitute a hostile work environment." *Burkett v. Glickman*, 327 F.3d 658, 662 (8th Cir. 2003). In this case, there was a single incident, which involved a nonsupervisory employee, and Kids Club responded to ensure that a similar incident would not occur. I find no genuine issue of material fact to support an ADA claim based on a hostile work environment, and Kids Club is entitled to summary judgment on this issue.

[12] Estes asserts that "[t]he Defendant [sic] maintains [sic] that this case should be analyzed under the burden shifting analysis of *McDonnell Douglas*. We agree, at least as it relates to the race case." (Filing No. 36, p. 8). However, Estes does not direct this Court to an alternate method to analyze the claim of disability discrimination.
   I do note that Estes states (without further argument) that Primm's statement—that because of Estes's disability she had missed critical days—is direct evidence of discrimination. Where direct evidence of discrimination exists, a court does not examine the claim under the *McDonnell Douglas* framework, but rather under a mixed-motive framework. That is, "a plaintiff's burden is tempered so that she need prove only that the discriminatory action was a motivating factor in an adverse employment decision." *Patten v. Wal-Mart Stores E., Inc.*, 300 F.3d 21, 25 (1st Cir. 2002). The threshold for direct evidence of discrimination is high, and "'mere background noise' and 'stray remarks' [are] excluded from its definition." *Id.* (citation omitted). "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence. Hence, direct evidence is relatively rare." *Id.* (citations omitted). Primm's statement can be interpreted as expressing her

F.3d 944, 948 (8th Cir. 1999) (citing *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995)).  Under the *McDonnell Douglas* burden-shifting scheme, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  To do so, a plaintiff must show "that [s]he has an ADA-qualifying disability; that [s]he is qualified to perform the essential functions of h[er] position, with or without a reasonable accommodation; and [that] [s]he suffered an adverse action due to h[er] disability." *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007) (citations omitted).

After a plaintiff has made a sufficient showing of a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  Once such a reason is articulated, the burden of production shifts back to the plaintiff to demonstrate that the proffered nondiscriminatory reason is a pretext for intentional discrimination. *Allen v. Interior Constr. Servs.*, 214 F.3d 978, 981 (8th Cir. 2000) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999)).

For purposes of this summary judgment motion, Kids Club does not dispute that Estes has a disability within the meaning of the ADA. (Filing No. 34, p. 14).  However, Kids Club argues that Estes cannot establish the second prong of her prima facie case—that she was qualified to perform the essential functions of her job with or without accommodation—due to her excessive absenteeism.

---

belief as to *why* the days were missed, a benign meaning, and not expressing *two separate reasons* (absenteeism and disability) for the termination.  Consequently, I do not find direct evidence of discrimination, and I will examine both the ADA and the Title VII claims under the *McDonnell Douglas* burden-shifting scheme.

11

It is well established that consistent and dependable attendance is an essential function of most types of employment. *See Greer v. Emerson Elec. Co.*, 185 F.3d 917, 921 (8th Cir. 1999) ("We have recognized that 'regular and reliable attendance is a necessary element of most jobs.'" (quoting *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998))). In this case, Estes's job duties involved supervising and helping students, and supervising other employees. There is no evidence that she was able to perform any of these duties when absent. Further, after a twenty-seven percent absence rate for the 2002–03 school year, Estes received notice that she was not meeting Kids Club's expectations with regard to her attendance. The following school year, Estes's absence rate did not "greatly improve" and she was absent twenty percent of the time. Consequently, I find that Estes has not established a prima facie case of discrimination for her ADA claim.

Kids Club argues that, even if Estes can make a prima facie showing of disability discrimination, it had a legitimate, nondiscriminatory reason for the adverse employment action—her excessive absenteeism. The Eighth Circuit has held that excessive absences qualify as a legitimate, nondiscriminatory reason for termination. *See Price v. S-B Power Tool*, 75 F.3d 362, 365–66 (8th Cir. 1996). I find that Kids Club's proffered reason is one which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.

In the final step of the *McDonnell Douglas* analysis, the burden shifts back to Estes to present evidence that Kids Club's nondiscriminatory reason for the adverse employment

action is a pretext for discrimination. Estes has presented no such evidence.[13] Consequently, I find that summary judgment should be granted in favor of Kids Club on the ADA claim with regard to the adverse employment action taken against Estes.

### 2. Failure to Accommodate

Estes argues that "[f]or the Defendant [sic] to deprive her of the wheelchair even hiding it, and stating that 'the students are not there to cater to her needs' and then hiding [sic] it from her, was a failure to accommodate." (Filing No. 36, p. 15). Estes does not cite to any case law to support this assertion.

A failure to provide a reasonable accommodation can constitute a sufficient ground for a claim of disability discrimination under the ADA. "On claims for failure to make reasonable accommodation under the ADA, [the court] appl[ies] a modified burden-shifting analysis." *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 900 (8th Cir. 2006) (citing *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003)). In the first step of the modified analysis, the plaintiff must make a facial showing that she has an ADA disability "*and that [s]he has suffered [an] adverse employment action*." *Id.* (emphasis added). Second, the plaintiff must make a facial showing that she is a qualified individual. *Id.*

---

[13] Estes states that "[a]ssuming the Defendant has articulated a legitimate non-discriminatory reason for each of the separate actions, (denying the raise, the leave, the termination) the burden shifts back to Plaintiff to demonstrate that this reason is merely a pretext for an unlawful discrimination. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069 [sic], 1072 (8th Cir. 1998). Ferris has produced sufficient evidence of pretext to compel the court to deny summary judgment." (Filing No. 36, p. 12). I note that there is no evidence anywhere on the record that Estes was denied a raise or denied leave. Further, the Court is unaware of any person or entity involved in the immediate case named "Ferris." Finally, Estes's argument fails to direct the Court's attention to any evidence, let alone a sufficient amount of evidence, to support a finding that Kids Club's reason for firing Estes was a pretext for discrimination.

In this case, Estes has not made a facial showing of the first element of her failure to accommodate claim. She has not shown that she was terminated, formally reprimanded, or otherwise subjected to any adverse employment action because of her disability while she was without the wheelchair. Consequently, I will find for Kids Club on her failure to accommodate ADA claim.

## B. Racial Discrimination

Estes claims that Kids Club and its representatives violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"), by subjecting Estes to "terms and circumstances of employment different than those applied to non-Black employees in that non-Black employees are not disciplined when their staff acts in an insubordinate manner and are not terminated when they attempt to recommend discipline for their subordinates." (Filing No. 1, p. 6 ¶ 24).

As with ADA claims, the *McDonnell Douglas* burden-shifting framework governs claims of race discrimination under Title VII and Section 1981. *See Gordon*, 469 F.3d at 1196. To establish a prima facie case of unlawful termination brought under Title VII and Section 1981, "a plaintiff must show (1) [s]he is a member of a protected class, (2) [s]he was meeting his employer's legitimate job expectations, (3) [s]he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently." *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007).

As with the ADA claim, I find that due to the excessive absenteeism Estes was not meeting Kids Club's legitimate job expectations. Further, Estes has not presented any

14

evidence that establishes the identity of another Kids Club employee with a similar attendance record who was not subjected to the adverse employment action to which Estes was subjected.  Rather, Kids Club has presented evidence that employees with *better* attendance records than Estes were not offered positions for the following school year.  Consequently, Estes has not established a prima facie case of discrimination. Further, similar to the analysis above, even if Estes could make out a prima facie case, Kids Club has offered a legitimate, nondiscriminatory reason for the actions taken against her.  Finally, Estes has not presented any evidence that the reason offered is a pretext for discrimination.  Accordingly, Kids Club's motion will be granted with respect to Estes's Title VII and Section 1981 claims.

IT IS ORDERED:

1. The Defendant's Motion for Summary Judgment (Filing No. 33) is granted;

2. With respect to the claims asserted under the Americans with Disabilities Act, Title VII, and 42 U.S.C. § 1981, the Plaintiff's Complaint (Filing No. 1) is dismissed with prejudice; and

3. With respect to the claims asserted under the Nebraska Fair Employment Act, the Plaintiff's Complaint (Filing No. 1) is dismissed without prejudice.

DATED this 8th day of April, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge